**SOUTHWESTERN FIRE & CASUALTY COMPANY, Appellant,**

v.

**Lester KENDRICK, Appellee.**

No. 15636.

Court of Civil Appeals of Texas.

Fort Worth.

July 1, 1955.

345

Cantey, Hanger, Johnson, Scarborough & Gooch, William B. David and David O. Belew, Jr., Fort Worth, for appellant.

Joe Spurlock and Kelly Jacobs, Fort Worth, for appellee.

BOYD, Justice.

Appellant Southwestern Fire & Casualty Company issued to appellee Lester Kendrick its Texas Standard policy of insurance on appellee's Buick automobile. The automobile was damaged in a collision on October 3, 1954, and appellee expended the sum of $45 in towing the automobile and the sum of $349.88 in repairing it. Judgment was rendered for the towing and repairing charges, less $50, as provided in the deductible clause. At the time of the collision the policy was in force, unless, as claimed by appellant, it had been previously cancelled.

Appellant pleaded that the policy had been cancelled by appellee, and, in the alternative, that it had been cancelled by mutual consent of the parties. Appellant alleged that Paul Squires was the agent of appellee, and was authorized to and did surrender the policy to appellant for cancellation.

The jury answered "No" to the issue as to whether Squires was acting as appellee's agent in returning the policy to appellant, and found that appellee did not vountarily consent to the cancellation of the policy.

Appellant's points for reversal are that the court erred in overruling its motion for instructed verdict on the ground that the evidence was uncontradicted that the policy had been cancelled by appellee, and that the evidence was uncontradicted that the policy had been cancelled by mutual consent. Its other point is that it was error to render judgment for the $45 towing charge.

Although the policy provided that it might be cancelled by the Company by giving appellee ten days written notice, it is not here contended that the Company cancelled the policy under that provision. It further provided that it "may be canceled by the Named Insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective." Appellee did not physically surrender the policy, and no such "written notice" was ever mailed.

Squires held a mortgage on the automobile, and the policy was payable to him as his interest might appear. The insurance was procured at the instance of Squires. He alone contacted appellant about issuing the policy, and it was delivered to him, with a certificate being sent to appellee. The premium was paid by Squires, and that amount was added to the loan and included in the note which ap-

pellee gave to Squires. On September 21, 1954, appellant's agent advised Squires by telephone that appellant desired to cancel the policy. On September 28, 1954, Squires told appellee that appellant desired to cancel the policy. Squires testified that he told appellee that the Company " 'wants to get off of this policy, they want to cancel it out. I guess that's what we will have to do.' As I recall, I said, 'Is that O.K. with you?' and Les, as I remember, he said it was all right." Appellee did not request Squires to have the policy cancelled.

Appellee testified that Squires told him that the Company was going to cancel the policy. He further testified, "I didn't say nothing. Wasn't nothing for me to say. Q. Didn't say anything? A. No, wasn't nothing for me to say, if they were going to do it." He said that he was going to try to secure other insurance when he "found out for sure it was going to be cancelled;" he testified that Squires did not tell him when the Company would cancel the policy. Nobody testified that appellee told Squires to surrender the policy to the Company, and appellee testified that he did not tell him to do so.

Through the same agent, but from another company, Squires secured another policy of insurance on the automobile, which policy did not cover collisions. It is not shown that appellee authorized Squires to procure this policy. Appellee testified that he wanted another policy of collision insurance when he "found out for sure" that the policy issued by appellant was cancelled.

Appellant's agent sent to Squires a check for the return premium. The check was payable to Squires. Squires cashed the check, and kept the money in an envelope at his office. About October 15, 1954, twelve days after the collision, Squires told appellee that he had the money for the return premium, and asked him if he wanted it, and appellee said, "No, just keep it until this thing is settled."

Appellant's agent testified that the refund would be less where the insured cancelled a policy than it would be where the Company cancelled it. The amount refunded to Squires in this instance was the amount that would be due to be refunded had the Company cancelled the policy. The agent made the following notation on the policy, "Cancelled by company, 9/29/54." He said that because the Company had requested cancellation, appellee was entitled to the larger refund.

We are unable to agree with appellant's contention that the evidence is uncontradicted that the policy was cancelled either by appellee or by mutual consent. Hanover Ins. Co. of New York v. Stevenson, 127 Tex. 186, 90 S.W.2d 822. The authority of Squires to act for appellee in surrendering the policy is not conclusively shown, if it is shown at all. Authority to procure insurance for another does not imply authority to cancel it. And, excepting what Squires did in the premises, there is absolutely no evidence that appellant and appellee cancelled the policy by mutual consent. Appellee was never contacted by any representative of appellant.

Although appellee testified that he had never seen the policy and did not know that appellant was required to give him ten days notice before it could cancel the policy, it appears from his conduct that he decided to wait and see if and when appellant cancelled it. If his attitude was not one of passive resistance, it was one of non-cooperation.

We do not think that Continental Fire & Casualty Ins. Corporation v. Swanson, Tex.Civ.App., 216 S.W.2d 241, and Austin Fire Ins. Co. v. Polemanakos, Tex.Com. App., 207 S.W. 922, cited by appellant, are authoritative under the fact situation presented by this record.

A clause of the policy imposed upon appellee, when loss occurred, the duty to "Protect the Automobile," and provided that "reasonable expense incurred in affording such protection shall be deemed incurred at the company's request." Appellee had the car towed from near Waco, Texas, the scene of the accident, to Fort Worth, Texas,

in which City he resided. The distance is about 100 miles. It was stipulated that the charge of $45 was reasonable for towing the car that distance. Appellant's complaint is that there was no evidence that appellee had the car brought to Fort Worth to "protect" it. It was placed in a repair shop and repaired. There is no evidence that the towing and storage would have been less had the car been removed to some other place. Since appellant denies liability on the policy, had the vehicle been stored at Waco, it might still be in storage there. The jury found that bringing the car to Fort Worth was "reasonably necessary" for its protection. No issues were requested to form a basis for any other finding as to reasonableness in an expenditure for protecting the car; and we think there is some evidence to support the jury's answer to the issue that was submitted.

The judgment is affirmed.