The FIDELITY & CASUALTY COMPA-
NY OF NEW YORK, Appellant,

v.

INDIANA LUMBERMEN'S MUTUAL
INSURANCE COMPANY et al.,
Appellees.

No. 24199.

United States Court of Appeals
Fifth Circuit.

Aug. 21, 1967.

Rehearing Denied Sept. 29, 1967.

M. Hendricks Brown, Sam J. Day, Brown, Day & Crowley, Fort Worth, Tex., for appellant.

Atwood McDonald, Herbert L. Tuchin, McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox, Fort Worth, Tex., for appellees.

Before BELL, GODBOLD and DYER, Circuit Judges.

DYER, Circuit Judge:

This is a coverage contest between two insurance companies. Indiana [1] sued Fidelity to recover one-half of the amount Indiana expended in settlement, attorney's fees and expenses incurred in the defense of personal injury cases brought against V. W. Young, its insured. Indiana claimed that on the date of Young's accident Indiana and Fidelity each had a liability policy insuring Young in full force and effect, and that Fidelity had declined to defend or to participate with Indiana in a compromise settlement of the suits. Both policies contained an "other insurance" clause which provided that if the insured had other insurance the company would not be liable under its policy for a greater portion of such loss than the applicable limit of liability stated in one policy would bear to that stated in the other policy. Fidelity, by a third party complaint, brought in Young and John B. Kinnaird d/b/a Kinnaird Bros., the parties for whom both policies had been issued, and sought cancellation of its policy or reformation to provide that its policy would be only excess coverage over Indiana's policy.

The District Court rendered judgment for Indiana in the amount sued for and denied the equitable relief of reformation. Fidelity appealed.

Prior to May, 1962, Young had leased the automobile involved in the collision from one Kinnaird, operator of an automobile leasing concern. The written lease contract provided that Kinnaird would arrange for automobile liability insurance in a company of his choice naming Young as the insured.[2]

Kinnaird had been carrying all of his insurance (including automobile liability on leased cars) with the Higginbotham Agency since 1961. On May 27, 1962, Higginbotham renewed the Fidelity policy in question. Mr. Higginbotham became ill and Kinnaird decided to transfer all of his insurance, including that on his leased cars, to the Ryan-Richards-Garrison Agency, recording agents for Indiana. To accomplish the transfer Kinnaird met and conferred with representatives of both agencies in his office in June, 1962, and it was agreed that the transfer was to take effect July 1, 1962. Higginbotham was to cancel the Fidelity policy and Ryan was to arrange to have Indiana pick up the coverage on that date. Neither Fidelity, Indiana nor Kinnaird intended that there would be more than one policy covering Young in effect on and after July 1, 1962, and that Indiana would be the sole insurer.[3]

---

1. For convenience, we will refer to the appellee as Indiana and to the appellant as Fidelity.

2. The contract provided in part: "Lessor shall obtain insurance in a company of his choice insuring the said automobile against fire, comprehensive coverage and upset and collision. Lessor shall obtain public liability in the amount of $100/300,000, and property damage in the sum of $5000.00 and shall include Lessee's name in the policy and pay the premium therefor, * * *."

3. The parties agreed upon the following facts, waived the necessity of proof, and the District Court incorporated them in the pretrial order:
"10. It was the intention of Ryan-Richards-Garrison Insurance Agency, in issuing the above mentioned policy which

Indiana issued its policy through the Ryan Agency effective July 1, 1962. On July 14, 1962, Young's accident occurred. In August a representative of Ryan picked up the Fidelity policy from Young and returned it to the Higginbotham Agency for cancellation.[4] The Fidelity policy was then canceled effective as of July 1, 1962.

No cancellation notice was ever sent to Young by Fidelity or its agent Higginbotham. The first time Young learned that Indiana rather than Fidelity had the coverage was after the accident when Indiana's agent Ryan came to pick up the Fidelity policy to send it to the Higginbotham Agency for cancellation. Since under the lease agreement it was Kinnaird's responsibility to obtain and pay for coverage for Young he was unconcerned about what company carried it.

Indiana contends that under the circumstances of this case Fidelity is not entitled to a cancellation of its policy with Young but rather is required under conventional subrogation[5] to contribute one-half of the amount that Indiana was required to pay.

Relying upon the fact that each policy contained the usual provision that the policy embodied all of the agreements existing between the insured and the company, and upon the further fact that the respective agents did not intend to and did not make any agreements that would have changed the written policies, Indiana argues that absent a notice of cancellation to Young the two policies were in force and effect on the date of

---

covered the Young automobile, that such policy should take the place of liability policy which had been issued by defendant, which is above mentioned.

"11. Neither Kinnaird Brothers, nor Young, intended during the months of May, June and July of 1962, to have more than one automobile liability insurance policy covering the automobile above described.

"12. The Ryan-Richards-Garrison Agency agreed with Kinnaird Brothers to take the responsibility of obtaining from Young, and having canceled, the policy which had been issued by defendant (Fidelity).

"14. The Ryan-Richards-Garrison Insurance Agency intended that the aforesaid policy issued by plaintiff (Indiana) should become effective for a period of one year commencing July 1, 1962.

"15. It was intended by the Ryan-Richards-Garrison Insurance Agency that the aforesaid policy issued by plaintiff (Indiana) should substitute for and take the place of the aforesaid policy issued by defendant (Fidelity).

"18. The above liability policy issued by plaintiff (Indiana) was in full force and effect with V. W. Young as Assured on July 14, 1962.

"19. The Ryan-Richards-Garrison Insurance Agency had the intention, prior to July 14, 1962, of obtaining from Young and delivering to the Higginbotham Agency for cancellation the policy which defendant had issued.

"20. On or about August 28, 1962, Ryan-Richards-Garrison Agency delivered to Higginbotham Agency the policy which had been issued by defendant with a letter of transmittal which, omitting formal parts, read as follows: 'We enclose Fidelity & Casualty Co. policy # VFF-R 74-48677 for V. W. Young which was replaced by a liability policy # FCA 11623232 in the Indiana Lumbermen's Mutual Insurance Co. on July 1, 1962.

"22. The Ryan-Richards-Garrison Insurance Agency intended to act in behalf of V. W. Young in the delivery to the Higginbotham Agency of the cancellation of the policy which defendant had issued."

4. The letter of transmittal from the Ryan Agency to the Higginbotham Agency states that the Fidelity policy covering Young was replaced by the Indiana policy on July 1, 1962.

5. We do not concern ourselves with the dispute of the parties as to whether the subrogation claimed by Indiana is legal, equitable, or conventional because we find that the Fidelity and Indiana policies do not result in concurrent liability. This being so, the cases of Southwestern Indemnity Company v. National Surety Corporation, 5 Cir. 1960, 277 F.2d 545; Commercial Standard Insurance Company v. American Employees Insurance Company, 6 Cir. 1954, 209 F.2d 60; Albany Insurance Company v. Central Mutual Insurance Company, D.C.S.C. 1960, 189 F.Supp. 527; Baysdon v. National Mutual Fire Insurance Company, 1963, 259 N.C. 181, 130 S.E.2d 311, and Aetna Insurance Company v. Texarkana National Bank, Tex.Civ.App.1933, 60 S.W.2d 251, are inapposite.

the accident. As Indiana puts it, "The written contracts controlled over any intention these people may have had. This would especially be true when Mr. Young had no knowledge of what was being done until after the collision occurred."

We think that Indiana's argument is constructed upon an incorrect two-pronged premise. The first proposition is to the effect that where a policy expresses the entire contract, such contract cannot be modified by an agent. Secondly, Indiana urges that there was no cancellation notice given to Young, nor was the Fidelity policy obtained from him for cancellation until after the accident; and that the rights and obligations of the various parties became fixed upon the happening of the collision—*ergo*, the Fidelity policy continued in force until that time.

■ We are not required here to pass upon the legal bases for modification of the terms of an insurance policy. Fidelity has not contended that its policy should be modified. It seeks the equitable relief of cancellation by reformation, on the ground that it was the intention of all parties that its policy was not to continue in effect after July 1, 1962. "Restrictions on the parties' legal power to modify their contract do not prevent a federal court, in the exercise of its equity power, from granting the remedy of reformation in proper cases." Commercial Standard Ins. Co. v. Maryland Cas. Co., 8 Cir. 1957, 248 F.2d 412, 415.

■ Indiana's assertion, that "Young did not have any intention about this one way or the other" (as to when the Indiana policy would take the place of the Fidelity policy) while correct is not controlling. By the clear terms of the automobile lease agreement Young gave Kinnaird full authority to select any company that Kinnaird desired to insure Young. This unequivocally made Kinnaird Young's agent for the purpose of procuring liability insurance for Young as lessee of Kinnaird's automobile, without limitation on Kinnaird's author-

ity as to the placement of coverage. When in June, 1962, Kinnaird called a meeting of the two agency representatives (Bigham of the Higginbotham Agency and Garrison of the Ryan-Richards-Garrison Agency) in which it was agreed that on July 1, 1962, Indiana would take over and Fidelity would cancel all of Kinnaird's business (including the Young policy), Kinnaird was acting as Young's agent with express authority to bind him, and the respective agencies were acting with authority as recording agents to bind their companies. Tex. Ins.Code Art. 21.14 § 2; Home Insurance Company of New York v. Roberts, Tex. Com.App.1937, 129 Tex. 178, 100 S.W.2d 91. Thus it was not only the clear intent of the parties that Indiana take over the Fidelity coverage but that intent was carried out by Kinnaird, acting for Young, in instructing the representatives of the two insurance companies to take appropriate action and in their agreement to do so.

■ What has already been said also disposes of Indiana's argument that there was no effective cancellation of Fidelity's policy until after the accident. While the Fidelity policy could have been cancelled by written notice to Young, this was not necessary in view of the mutual agreement to cancel as of July 1, 1962, agreed upon on June 27, 1962, by Kinnaird in behalf of Young and Fidelity through its recording agent Higginbotham Agency. It is of no moment that the Ryan Agency failed to obtain possession of the Fidelity policy from Young to deliver it for cancellation until after the accident. A formal surrender of a policy by the insured after notice of or a mutual agreement to cancel is not necessary to give effect to the cancellation. Cf. Aetna Ins. Co. v. Texarkana National Bank, Tex.Civ.App.1933, 60 S.W.2d 251, 253. This situation patently differs from those instances, relied on by Indiana, in which there is a direct relationship between an insured and his insurance agent and the insured simply authorizes his agent to procure insurance. There, of course, the authority to

procure does not imply the power to cancel. *Alliance Ins. Co. v. Continental Gin Co.,* Tex.Com.App.1926, 285 S.W. 257; *Southwestern Fire & Casualty Co. v. Kendrick,* Tex.Civ.App.1955, 281 S.W. 2d 344.

Where, as here, the party seeking equitable relief has shown that the policy as written did not reflect the true intent of the parties it is a proper case for reformation. *Rattan v. Dicker,* Tex. Civ.App.1963, 373 S.W.2d 306; *Continental Casualty Co. v. Bock,* Tex.Civ.App. 1960, 340 S.W.2d 527.

The evidence is without conflict, and is for the most part stipulated in the pre-trial order. Fidelity has shown by clear, convincing and satisfactory proof that it is entitled to the equitable relief of reformation. *Aetna Ins. Co. v. Stanford,* 5 Cir. 1959, 273 F.2d 150; *Continental Casualty Co. v. Bock, supra.*

The judgment of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.