WISCONSIN BARGE LINE, INC. (Formerly Bernhardt Bros. Tugboat Service, Inc), Plaintiff-Appellee-Cross Appellant,

v.

COASTAL MARINE TRANSPORT, INC., Edinburg Assurance Co. Ltd. No. 2A/C, et al., Defendants-Appellants-Cross Appellees.

No. 26904.

United States Court of Appeals Fifth Circuit.

July 23, 1969.

John W. Sims, Edwin K. Legnon, New Orleans, La., Mendes & Mount, New York City, for Underwriters at Lloyds' and British Insurance Companies; Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., of counsel.

William A. Porteous, III, Porteous, Toledano, Hainkel & Johnson, New Orleans, La., for Greenwood Insurance Agency, appellant.

Roland Kizer, Jr., Baton Rouge, La., Peter J. Butler, New Orleans, La., Maurice J. Wilson, Baton Rouge, La., Breazeale, Sachse & Wilson, Baton Rouge, La., for Wright Insurance Agency, Inc.

Charles E. Lugenbuhl, New Orleans, La., for Wisconsin Barge Line, Inc.

Before COLEMAN and SIMPSON, Circuit Judges, and MEHRTENS, District Judge.

MEHRTENS, District Judge:

Wisconsin Barge Line, Inc. (hereafter Wisconsin) sued in admiralty to recover on two hull policies from Greenwood Insurance Agency (hereafter Greenwood) Wright Insurance Agency (hereafter Wright), Underwriters at Lloyds of

London (hereafter Lloyds) and Coastal Marine Transport Company, Inc. (hereafter Coastal), bareboat charterer of the tug "BADGER BOY" which was lost during a hurricane. Lloyds filed a cross-complaint against Greenwood, and Greenwood filed a similar cross-complaint against Wright.

After trial the Court entered judgment in favor of Wisconsin against Coastal for $45,635.00 for loss of the vessel and charter hire. In addition, the Court rendered judgment against Lloyds for $40,000.00 with interest and costs, and judgment for Lloyds against Greenwood for all sums Lloyds would be required to pay. All actions and cross-actions against Wright and Coastal were dismissed. From this judgment, Wisconsin, Lloyds and Greenwood appeal. We affirm.

The undisputed facts show that Coastal, in the charter, was charged with maintaining hull insurance on the tug. Due to a poor loss-claim record and financial difficulties, Coastal was unable to maintain American coverage through its agent Wright. Greenwood, learning of Costal's plight, offered to place the insurance through Lloyds and its affiliates and to finance the premiums through a bank it did business with. This transaction was completed and Wright (though remaining Wisconsin's agent in other matters) gave up the Coastal account.

Later, Wisconsin demanded and received an amendment naming it as an assured as opposed to its previous status as loss-payee.

Greenwood, having become aware that Coastal was searching the British market for cheaper coverage, decided to order cancellation of the policy in question. Simultaneously, Coastal advised Greenwood that it could place the insurance elsewhere for less than the premiums charged and that the policy should be cancelled. Notices of cancellation were sent out by Greenwood to every conceivable party in interest except Wisconsin, a named assured.

The trial court specifically found that Coastal was not an agent of Wisconsin; that Wright, though an agent, acted as a broker in this transaction and was not clothed with authority to accept a notice of cancellation for Wisconsin. The trial court stated: "It was not the plaintiff (Wisconsin) who had designated Wright Agency to secure this coverage but rather it was Coastal Marine for whom Wright was acting as broker. No duty was ever owed by Wright to the plaintiff." The evidence also showed that one named assured, Coastal, did receive notice of cancellation and that the failure to notify Wisconsin was due to an oversight by Greenwood.

Upon these facts the District Court held that Louisiana Revised Statute, Title 22, Section 636, which provides that cancellation of a policy of insurance shall not be effective unless in writing to the assured or his representative on the "subject of insurance" had not been complied with. The District Court further found that Greenwood had authority to act for the British insurers and was responsible for properly carrying out the cancellation. As a result, the policy was held to be in full force as to Wisconsin's interest.

■■■ As to what would in fact have given Wright or Coastal authority to accept cancellation, we cite with approval Jordan v. Commercial Union Fire Ins. Co. of N. Y., 167 So. 227 (La.App. 1936). There it was said: "The rule then very plainly is that the authority to procure insurance or 'to keep up' insurance does not, without special authority as to cancellation, authorize the acceptance of notice of cancellation." Based on the record in this respect we will not disturb the determination below that: "While Wisconsin did acquiesce in the placement of the coverage by the Greenwood Agency through underwriters at Lloyds and the other British companies, and while the plaintiff did correspond with Wright in connection with an error in the policy, the plaintiff certainly did not, in any way, confer special authority

on the Wright Agency to accept a notice of cancellation on its behalf."

Fidelity and Casualty Company of New York v. Indiana Lumbermen's Mutual Insurance Co. et al., 382 F.2d 839 (5 Cir. 1967), relied upon by Greenwood to support its assertion that notice of cancellation to Coastal was notice to Wisconsin, is distinguishable. In that case it was the lessor who procured the insurance, the lessor who cancelled it, and the lessee who received no notice of it. The suit was brought by one insurer against another for contribution based on an "other insurance" clause. Further, and most important, the contract specifically authorized the lessor to insure the vehicle. In the instant case the charter *required* Coastal to keep a minimum amount of insurance on the vessel; thus no agency relationship could be inferred from the circumstances.

■ The trial court's findings of fact may not be disturbed under Rule 52(a), Federal Rules of Civil Procedure. Its conclusions of law, though mixed with its findings of fact, are supported by the evidence and applicable law.

■ British underwriters rely upon Ruby Steamship Company v. Johnson & Higgins, 18 F.2d 948 (2 Cir. 1927), asserting its position is similar to that of the brokers in that case. The case *sub judice* is essentially different. In *Ruby* British underwriters issued a policy of insurance to an American broker reciting that the premiums had been paid. Premiums were not paid by the insured and the American broker, after due notice, cancelled the policy. The vessel was later lost at sea. The insured sued the American broker claiming that since as between the broker and the British underwriters the policy was paid, the broker could not cancel it for non-payment of premiums by the insured. The Court rejected such contentions. Here no such claims are made and the broker's right to cancel, after proper notice, is not questioned. Unlike the cited case, no notice whatever was given to Wisconsin, a named assured. The British in-

surers have not complied with the statutory requirement as to cancellation and the owner, the only person with a right to the hull proceeds in a total loss, was never notified of the attempted cancellation by Greenwood. A foreign insurance company issuing to a person in Louisiana a policy of marine insurance is conducting an insurance business. It is not, however, engaged in interstate or foreign commerce so as to relieve it of the necessity of complying with state statutes intended to protect the insured. Neither can it avoid responsibility to the insured by conducting its business through American Brokers. *See*, Ruby Steamship Corporation Ltd. v. American Merchant Marine Insurance Co. et al., 224 App.Div. 531, 231 N.Y.S. 503 (N.Y. App.1928). If there is anything in Ruby Steamship Corporation v. Commercial Union Assurance Co. (C.A.1933), 46 Ll.L.Rep. 265, which would permit an English underwriter to escape liability when the American broker attempts an ineffectual cancellation, then we expressly reject it.

Greenwood contends that the District Court erred in refusing to permit "introduction of evidence concerning breach of warranty and automatic voiding of the policy", asserting that it had evidence that Coastal obtained insurance on the tug after the attempted cancellation of the British policy. Assuming the British policy was still in effect, Greenwood argues the second policy would constitute a breach of warranty in the first as coverage under two policies was not allowed by the terms of the first.

■ We are referred to several portions of the record dealing with this particular point, but nowhere therein did counsel for Greenwood offer to prove a breach of warranty. Both Greenwood's answer and the pretrial order mention the alleged warranty issue. In the trial record, however, we note that Greenwood was allowed, over Wisconsin's objection, to offer evidence of other insurance on at least two occasions. Greenwood, however, never offered to prove any breach of warranty,

and after offering evidence of other insurance, never attempted to show the content of the policy in question, nor was it offered into evidence.

 This court will not consider evidentiary questions for which no proper record on appeal has been made. Before this court will consider alleged error at the trial level, the trial judge must first have the opportunity to pass upon the issue.

In United States v. Sinor, 238 F.2d 271, 277 (5 Cir. 1956), we said:

"* * * the appellee * · * * refrained from making proof of other facts which were not before the district court and are before us only by the statements of counsel, we can only say that we must decide the case on the record before us. We cannot, on appeal, give credence to factual recitals which might have been but were not presented to the trial court. * * * A question which was [not] * * * presented to the trial court cannot be considered on appeal. Beechwood Lumber Co. v. Tobin, 5 Cir., 1952, 199 F.2d 878; City of Orange v. Fidelity and Deposit Co., 5 Cir., 1950, 180 F.2d 369; Bowles v. Strickland, 5 Cir., 1945, 151 F.2d 419."

See also, Commercial Nat. Bank in Shreveport v. Parsons, 145 F.2d 191 (5 Cir. 1944); Mutual Benefit Health and Accident Ass'n v. Francis, 148 F.2d 590, 598 (8 Cir. 1945); Boeing Airplane Company v. Brown, 291 F.2d 310 (9 Cir. 1961); Roberts v. United States, 316 F.2d 489 (3 Cir. 1963).

Wisconsin asserts that it should have been granted penalties and attorney's fees for Lloyds' failure to pay the claim upon demand.

Under LSA–R.S. 22:658, a court may award a 12% penalty, and attorney's fees to an aggrieved party upon failure of an insurer to pay a lawful claim, if such failure "is found to be arbitrary, capricious, or without probable cause."

 The trial court found that Lloyds did not act arbitrarily and capriciously in refusing to pay Wisconsin's claim, but rather in the good faith belief that the policy was properly cancelled. The trial record supports such a finding, and while we may have chosen to award attorney's fees in this particular case, we are not justified in substituting our judgment for that of the District Court, F.R.Civ.P. 52(a).

Accordingly, the judgment is affirmed.