**Miriam Gertrude ANDREWS, Executrix of the Estate of Richard Andrews**

**v.**

**CHEMICAL CARRIERS, INC., Appellant in No. 71–1008, and Chemical Transporter, Inc.**

**Appeal of CHEMICAL TRANSPORTER, INC., in No. 71–1009.**

**Nos. 71–1008, 71–1009.**

United States Court of Appeals, Third Circuit.

Argued Dec. 16, 1971.

Decided Feb. 15, 1972.

As Amended March 30, 1972.

**638**

Timothy A. Hanan, Macklin, Hanan & McKernan, New York City (William E. Wiggin, Richards, Layton & Finger, Wilmington, Del., on the brief), for appellants.

Marvin I. Barish, Freedman, Borowsky & Lorry, Philadelphia, Pa. (Arthur Inden, Young, Conaway, Stargatt & Taylor, Wilmington, Del., on the brief), for appellee.

Before BIGGS, VAN DUSEN, and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a decision and order of the District Court for the District of Delaware (sitting in admiralty) requiring Chemical Carriers, Inc. and Chemical Transporter, Inc. to pay damages in the amount of $221,335.47 to Miriam Gertrude Andrews, Executrix of the Estate of Richard Andrews. The action was brought by Richard Andrews on March 4, 1963, pursuant to the Jones Act, 46 U.S.C. § 688 et seq., to recover damages for injuries received by him on June 14, 1962, which caused his death on October 7, 1964.[1] The district court found that the respondents had been negligent in failing to provide sufficient manpower during a June 7–10, 1962, voyage into drydock at the Baltimore, Maryland, shipyard and that this negligence was the proximate cause of the injury and death of Andrews. The district court also found that Andrews himself was negligent in failing to request additional manpower during the voyage and in continuing to work after the ship arrived in drydock on June 10, 1962; the award of damages was reduced by one-third to reflect the district court's assessment of Andrews' comparative negligence. The respondents appeal from the district court decision. For the reasons to be stated, we have concluded that the arguments advanced by the respondents on appeal are unpersuasive and affirm the judgment of the district court. After careful consideration, we find that none of the pertinent findings of the district court which are subject to review on these appeals, including those discussed below, is clearly erroneous. See F.R.Civ.P. 52(a); McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Petition of M. & J. Tracy, Inc., 422 F.2d 929, 931 (3rd Cir. 1969).[2]

The focal point of this case is the June 7 to June 10, 1962, voyage of the S. S. Chemical Transporter—a tank vessel engaged in the coastal transportation of chemicals—into the Baltimore, Maryland, shipyards for its annual inspection and overhaul. Andrews, while normally the third mate aboard the vessel, served as acting chief mate during this voyage because the regular chief mate was on vacation. Although

---

1. After Andrews' death, Miriam Gertrude Andrews, his wife and the executrix of his estate, was substituted as libellant.

2. See United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). It is not our province to state whether we would have made the findings included in the district court opinion.

in most cases the vacancy created by a mate's vacation would not be filled and the S. S. Chemical Transporter would normally carry three mates (including the chief mate), there was evidence to support the district court's finding that on the voyage into drydock in preparation for the annual inspection of the tanks by shipyard officials, it was the established custom and practice in the coastal trade for a vessel to carry all four mates (the normal complement) because of the extra work involved in supervising the tank cleaning operations carried out by the crew. On the June 7–10, 1962, voyage of the S. S. Chemical Transporter into drydock, however, a fourth mate was not provided. The district court found that, as a result of this undermanning, Andrews, as acting chief mate, was required to both supervise the tank cleaning operations and stand his regular watch of eight hours per day. The district court also found that the stress resulting from this extra work activated a Meniere's disease syndrome which Andrews had suffered in the past, which caused Andrews to fall off a ladder aboard ship on June 14, 1962, sustaining craniocerebral injuries which resulted in his death on October 7, 1964.

▇▇▇ Respondents argue that even if they were negligent in failing to provide a fourth mate during the June 7–10, 1962, voyage into drydock,[3] the determination of the district court that this negligence was the proximate cause of Andrews' injuries is erroneous as a matter of law either (a) because Andrews could have avoided the overwork and resulting stress which caused his injuries by delegating supervision of the tank cleaning operations to one of the many others on board who were qualified to do this work, or (b) because had Andrews not concealed from respondents his several experiences of dizziness, mild deafness and ringing in the ears, which a doctor had diagnosed as "slight Meniere's disease" on May 18, 1962, he would not have been even permitted to serve on board the S. S. Chemical Transporter, much less perform the work that resulted in his injury and death. However, on the first issue, the district court found that "as acting chief mate . . . decedent [Andrews] was required to supervise tank cleaning operations" and this finding is adequately supported by the record. On the second point, although the district court made no finding regarding an intentional concealment and no conclusion regarding a negligent concealment, the respondents were not thereby prejudiced because the refusal of the district court to find on this record that this concealment was the sole proximate cause of Andrews' injuries is not clearly erroneous since respondents have cited no record support for the proposition that Andrews would not have been permitted to serve on board or to perform his June 7–10, 1962, work had respondents been made aware of Andrews' condition (see Reply Brief at 20). Accordingly, we reject these arguments advanced by the respondents.

▇▇▇ Respondents also maintain that the written log entries, pay records and tank cleaning reports contradict the less reliable oral testimony that during the June 7–10, 1962, voyage Andrews stood his regular watches, in addition to supervising the tank cleaning work,[4] and

---

3. Although there is a suggestion by the respondents that this finding of negligence for their failure to provide a fourth mate is not supported by the record, the record requires the rejection of this contention.

4. Respondents argue that an examination of the log book of the S. S. Chemical Transporter (PX–1) reveals that it was the custom and practice of the watch standing officer (Andrews included) to make various entries and initial each watch stood, but that in the period June 7 through June 10, 1962, Andrews made no factual entries and never entered his initials as the watch standing officer; instead, all of the entries and initials entered during this period are those of Wathne and Mollevik, the other two mates aboard. Also, the tank cleaning reports for the June 7–10, 1962, period and the pay records for this period are consistent with Andrews not having stood his regular watches during this voyage (see PX–3, PX–4, DX–2).

that therefore the basis of Andrews' claim of stress brought on by required and unusual overwork is completely undermined. If it were not for the failure of respondents to present this argument to the district court,[5] we might well be inclined to remand the case to the district court for reconsideration and amplification of its findings on this difficult factual issue as presented by the record in this case. *Cf.* Roeder v. Alcoa Steamship Co., 422 F.2d 971, 973–974 (3rd Cir. 1970); Simpson v. Union Oil Co., 411 F.2d 897, 900 n. 2 (9th Cir. 1969). However, there was oral testimony to support the finding of the district court on this point,[6] and we believe that sound principles of judicial administration preclude this court from considering arguments on issues of fact not raised or presented to the district court. *See, e. g.*, Maricopa County v. American Pipe & Const. Co., 431 F.2d 1145 (9th Cir. 1970); Wisconsin Barge Line, Inc. v. Coastal Marine Transport, Inc., 414 F.2d 872, 875–876 (5th Cir. 1969); Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964); Roberts v. United States, 316 F.2d 489, 497 (3rd Cir. 1963). *Cf.* United States v. Grosso, 358 F.2d 154, 158 (3rd Cir. 1966), rev'd on other grounds, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Thus, respondents' argument on this issue is rejected.

■ Respondents also argue that the district court's reduction of damages by

---

The evidence that Andrews did in fact stand his regular watches during this June 7–10, 1962, period consisted primarily of the testimony of two crew member friends of Andrews given more than five and seven years, respectively, after the June 14, 1962, accident (see the testimony of Rios and Linneman at 15a, 17a, 54a, 61a–62a). Captain Evans, who commanded the S. S. Chemical Transporter during the month of June 1962, also testified in December of 1969 that Andrews stood watch during the June 7–10, 1962, voyage, although he could not say how frequently he stood watch and thought that Andrews was relieved for four of his normal eight hours per day by the other two mates on board (see 203a, 265a–266a).

5. The respondents did argue before the district court that Captain Evans' testimony indicated that Andrews was relieved for a portion of his regular watches during the June 7–10, 1962, voyage. Thus, at the January 29, 1970, oral argument before the district court, respondents' attorney declared:

   "There is also testimony by the captain that not only would he [Andrews] have been relieved from tank cleaning and permitted merely to stand watch, but *he was also actually relieved for approximately two hours a day on watch standing.* This is another example of the way the time the man has spent has been sort of puffed up." (Emphasis added.)
   (Document No. 79, N. T. 43–44).

   But at no time before the district court did respondents either argue that Andrews stood none of his watches during the June 7–10, 1962, voyage or direct the district court's attention to the log book of the S. S. Chemical Transporter (which was available and introduced into evidence before the district court) in support of this claim as they do now before this court. These arguments were not made in any brief filed before the district court (including Defendants' Post-Trial Memorandum (Document No. 69)); they were not made in respondents' Proposed Findings of Fact and Conclusions of Law (Document No. 72); and they were not made at the January 29, 1970, oral argument (see Doc.No.79; N. T. 33, 37–38, 39–40, 44). Thus, at the January 29, 1970, oral argument, the attorney for respondents declared immediately after his reference (quoted above) to Captain Evans' testimony that Andrews was relieved from some of his watch duties: "I think truly that he [Andrews] did put a great deal of time in on this voyage, but I do think also he did put it in electively" (Doc.No.79, N. T. 44). Indeed, these claims were only first advanced in this court by the Reply Brief filed by respondents. It seems clear from the record in this case that the respondents, having failed in their defense arguments presented to the district court initially, have now on appeal advanced arguments which could have been, but which were not addressed first to the district court. Under these circumstances, we reject respondent's suggestion that the case be remanded to the district court on this issue.

6. See n. 4, *supra.*

one-third due to Andrews' own negligence is grossly inadequate and fails to reflect the comparative degrees of negligence. The record requires the conclusion, however, that the district court's determination of this issue is justified by the record.

The remaining arguments advanced by respondents have been considered and are rejected.

Accordingly, the judgment of the district court will be affirmed.