# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 1, 2013

No. 11-10403

Lyle W. Cayce
Clerk

In the Matter of: TIMOTHY MICHAEL FRAZIN,

Debtor

---

TIMOTHY MICHAEL FRAZIN,

Appellant

v.

HAYNES & BOONE, L.L.P.; NINA CORTELL; WARREN DODSON; GRIFFITH & NIXON, P.C.; SCOTT GRIFFITH,

Appellees

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Timothy Frazin appeals the judgment of the district court affirming the final judgment entered by the bankruptcy court on certain state-law counterclaims that Frazin filed against the Appellees, attorneys who were authorized by the bankruptcy court to represent Frazin in a separate lawsuit. Frazin argues that the bankruptcy court lacked the authority to enter a final judgment on these claims in light of the Supreme Court's decision in *Stern v.*

No. 11-10403

*Marshall*, 131 S. Ct. 2594 (2011).  Holding that the bankruptcy court lacked jurisdiction over Frazin's state-law counterclaim under the Texas Deceptive Trade Practices Act, we AFFIRM in part and REVERSE in part.

## I.  BACKGROUND

A.    *Factual Background*

Frazin filed a voluntary petition under Chapter 13 of the Bankruptcy Code.  While the bankruptcy proceedings were pending, Frazin filed suit in state court against Lamajak, Inc. for breach of contract, promissory estoppel, and quantum meruit.  Frazin filed an application with the bankruptcy court to employ Appellee Griffith & Nixon, P.C. as special counsel to represent him in his action against Lamajak.  The bankruptcy court authorized Frazin to employ Griffith & Nixon on a contingency fee basis and provided that the firm would be paid following a fee application to the court.

On April 18, 2005, the bankruptcy court entered an order discharging Frazin, but the case remained open pending the outcome of Frazin's state-court suit, as the Chapter 13 plan provided that a portion of any potential recovery would be used to satisfy unsecured claims against the bankruptcy estate.

After a two-week trial on Frazin's state-law claims against Lamajak, the jury awarded Frazin three alternative recoveries: (1) $4,000,000 for breach of contract; (2) $1,400,000 for promissory estoppel; and (3) $1,125,000 in quantum meruit.  The court entered judgment on the $4,000,000 award for breach of contract, as well as attorneys' fees and interest, for a total award of $7,158,383.10 (which was later reduced to $6,360,132.40 because of an error in the interest calculation).  Lamajak appealed.

Frazin filed an application with the bankruptcy court to employ Appellee Haynes & Boone, LLP as special counsel to represent him in the appeal.  The bankruptcy court authorized Frazin to employ Haynes & Boone and again provided that the firm's fees would be paid upon application to and approval by

2

No. 11-10403

the bankruptcy court. The bankruptcy court ordered that any litigation proceeds awarded to Frazin would be paid to and held in trust by Haynes & Boone to allow the Chapter 13 trustee to determine the amount necessary to satisfy the remaining claims against the estate.

On appeal, Lamajak argued that Frazin was not entitled to recovery on any of his theories. Haynes & Boone responded to Lamajak's arguments with briefs on the merits and argued the appeal orally before the Fifth Court of Appeals of Texas. The court reversed the award for breach of contract, holding that Frazin had not presented sufficient evidence to find that a contract with definite terms had been entered into. *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 794 (Tex. App.—Dallas 2007, no pet.). The court awarded Frazin recovery on his quantum meruit claim, *id.* at 798, that, along with attorneys' fees and interest, resulted in an award of approximately $3.4 million. Lamajak sought an extension of time to file a petition for review in the Texas Supreme Court, around which time the parties settled for $3.2 million.

Pursuant to the procedure ordered by the bankruptcy court, Lamajak wired $3.2 million to a Haynes & Boone trust account. Haynes & Boone filed a motion seeking guidance from the bankruptcy court on disbursement of the proceeds; it also filed a request for an expedited hearing on this motion. Both Haynes & Boone and Griffith & Nixon (collectively, the "Attorneys") filed applications with the bankruptcy court requesting approval of their fees. Frazin filed objections to the fee applications filed by each firm.

## B.    *Procedural Background*

In response to the Attorneys' request for fees, Frazin filed state-law counterclaims against them for negligence, violations of the Texas Deceptive Trade Practices Act ("DTPA"), and breach of fiduciary duty. The case was tried over six days before the bankruptcy court. The bankruptcy court ruled against Frazin on the merits of his negligence and DTPA claims. The bankruptcy court

3

No. 11-10403

determined that Frazin had shown a breach of fiduciary duty, but since he failed to prove damages as a result of the breach, the court ruled against him on this claim as well. The bankruptcy court also concluded that the Attorneys' breaches of duty were not clear and serious enough to warrant fee forfeiture. Finally, the bankruptcy court overruled Frazin's objections to the Attorneys' fee applications and awarded the Attorneys the amount requested in their original fee applications.

The district court affirmed the judgment in all respects in a brief order. Frazin timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court's final judgment in this case gives us jurisdiction under 28 U.S.C. § 1291. "We review a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision that the district court applied." *Stettner v. Smith* (*In re IFS Fin. Corp.*), 669 F.3d 255, 260 (5th Cir. 2012) (citation omitted) (internal quotation marks omitted). We thus review factual findings for clear error and legal conclusions de novo. *Id.* "When the district court has affirmed the bankruptcy court's findings, [the clear error] standard is strictly applied, and reversal is appropriate only when there is a firm conviction that error has been committed." *Id.* at 260–61 (citation omitted) (alteration in original, internal quotation marks omitted).

## III. DISCUSSION

*A. Stern v. Marshall*

Frazin argues that *Stern v. Marshall* compels the conclusion that the bankruptcy court lacked the authority to enter a final judgment on his state-law counterclaims. *Stern* involved litigation over the estate of J. Howard. 131 S. Ct. at 2601. Howard's wife at the time of his death, Vickie Marshall (also known by her stage name Anna Nicole Smith), was not included in his will, and before

4

No. 11-10403

Howard's death, she filed suit in Texas state probate court, arguing that Howard's son Pierce had fraudulently induced Howard to sign a living trust that did not include her. *Id.* The probate court upheld the trust and Howard's will. *Marshall v. Marshall*, 547 U.S. 293, 302 (2006). Following Howard's death, Vickie filed a petition for bankruptcy in the Central District of California. *Stern*, 131 S. Ct. at 2601. Pierce filed a complaint in the bankruptcy proceedings, contending that Vickie had defamed him through media coverage of her fraudulent inducement claim; he also filed a proof of claim for that action, seeking to recover his claimed damages from Vickie's bankrupt estate. *Id.* Vickie counterclaimed for tortious interference with the gift she had expected from Howard, a claim which was similar in substance to the fraudulent inducement claim she had earlier lost in Texas probate court. *Id.* After the bankruptcy court ruled in Vickie's favor, Pierce argued that the bankruptcy court had lacked jurisdiction over Vickie's counterclaim because it was not a "core proceeding." *Id.*

The Supreme Court held that Vickie's counterclaim was a core proceeding under the plain text of 28 U.S.C. § 157(b)(2)(C),[1] which states that

---

[1] The full text of 28 U.S.C. § 157(b)(1)–(2) is as follows:

(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

    (A) matters concerning the administration of the estate;

    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

    (C) counterclaims by the estate against persons filing claims against the estate;

    (D) orders in respect to obtaining credit;

    (E) orders to turn over property of the estate;

No. 11-10403

"counterclaims by the estate against persons filing claims against the estate" are "core proceedings." *Id.* at 2604–05 (internal quotation marks omitted). However, the Court went on to hold that § 157(b)(2)(C) is unconstitutional insofar as it allows bankruptcy courts to enter final judgments in state-law counterclaims that would not necessarily be resolved in the process of ruling on a creditor's proof of claim. *Id.* at 2620.

Although the Court stated that its decision was "narrow," *id.*, its reasoning was sweeping. In explaining its holding, the Court discussed the importance of Article III in maintaining separation of powers among the branches of the federal government, safeguarding the independence of the judicial branch, and protecting litigants. *Id.* at 2608–09. The Court stated that "[w]hen a suit is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789, and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Id.* at 2609 (citation and internal quotation marks omitted). The Court concluded with a holding that was notable for its repetition throughout the opinion: bankruptcy courts "lack[] the constitutional authority to enter a final

---

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620.

We must determine whether, and to what extent, *Stern* affects the propriety of the bankruptcy court's entry of final judgment on Frazin's claims. Frazin brought state-law counterclaims against the Attorneys, which, like the counterclaim brought by Vickie in *Stern*, are defined by § 157(b)(2)(C) as "core proceedings." A previous panel of this court has held that bankruptcy courts have the authority to enter final judgments in all proceedings defined as "core" by § 157(b). *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc.* (*In re Hudson Shipbuilders, Inc.*), 794 F.2d 1051, 1054–55 (5th Cir. 1986).

Because a previous panel has already resolved this issue, we cannot overturn its decision "absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court or by our *en banc* court." *Technical Automation Servs. Corp. v. Liberty Surplus Ins. Corp.*, 673 F.3d 399, 405 (5th Cir. 2012) (internal quotation marks omitted). "[F]or a Supreme Court decision to change our Circuit's law, it 'must be more than merely illuminating with respect to the case before [the court]' and must 'unequivocally' overrule prior precedent." *Id.* (alteration in original) (quoting *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001)). Thus, we must decide whether *Stern* unequivocally *sub silentio* overruled *Hudson*.

*Hudson*'s holding that bankruptcy courts can enter final judgments in *all* core proceedings is clearly inconsistent with *Stern*'s holding that bankruptcy courts cannot enter final judgments in one type of core proceeding, namely, state-law counterclaims that are not necessarily resolved in the claims-allowance process. We therefore conclude that *Stern* has unequivocally *sub silentio* overruled *Hudson* as to that type of core proceeding.

No. 11-10403

The final issue we need to decide is whether the claims brought by Frazin fall within the scope of the *Stern* opinion. Despite the narrowing language at the end of the Court's opinion, *Stern* clearly grounded its reasoning in principles that are broad in scope. The Court's concern for separation of powers and the independence of the judiciary is equally as sharp with respect to the state-law counterclaims brought by Frazin as it was with the counterclaim brought by Vickie in *Stern*. Based on the reasoning in the opinion, we see no basis for treating Frazin's state-law counterclaims for malpractice, breach of fiduciary duty, and violations of the DTPA any differently than the Court treated Vickie's counterclaim for tortious interference with a gift.[2] Thus, we must apply the test from *Stern* to determine whether any of these counterclaims would necessarily have been resolved in the claims-allowance process.[3]

---

[2] We do not decide today whether the *Stern*'s holding extends to other core proceedings under § 157(b)(2). Our holding simply applies the *Stern* test to state-law counterclaims under § 157(b)(2)(C). Future cases must determine whether *Stern* applies to other core proceedings. This court has only begun the task of interpreting the scope of *Stern*. *See In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n.12 (5th Cir. 2013)(declining to extend *Stern* to proceedings under § 157(b)(2)(K) in light of "*Stern*'s express instruction that its holding applied only in one isolated respect" (quotation marks omitted)); *Technical Automation*, 673 F.3d at 406 (interpreting *Stern* as holding that "the jurisdiction of the bankruptcy courts did not extend to most counterclaims based on common law").

[3] The Attorneys argue that Frazin consented to the jurisdiction of the bankruptcy court and waived any objection to the contrary by filing his claims there and failing to object. However, when "separation of powers] is implicated in a given case, the parties cannot by consent cure the constitutional difficulty . . . . When these Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." *C.F.T.C. v. Schor*, 478 U.S. 833, 850–51 (1986). As discussed above, *Stern* makes clear that the practice of bankruptcy courts entering final judgments in certain state-law counterclaims "compromise[s] the integrity of the system of separated powers and the role of the Judiciary in that system." 131 S. Ct. at 2620. Thus, structural concerns cannot be ameliorated by Frazin's consent or waiver.

8

No. 11-10403

*1. Malpractice*

We turn first to Frazin's claim for malpractice. In his complaint in the bankruptcy court, Frazin alleged that the Attorneys were negligent in the prosecution of the underlying Lamajak trial and appeal. Frazin alleged the same acts of negligence in the objections that he filed to the Attorneys' fee applications. Notwithstanding Frazin's objections and his counterclaim, the bankruptcy court awarded the Attorneys' fees as requested.

Bankruptcy courts are permitted to award fees to professionals by 11 U.S.C. § 330. That section also contains guidelines to direct a bankruptcy court's discretion in making such fee awards. It states that a bankruptcy court may award "reasonable compensation" to a Chapter 13 debtor's attorney "based on a consideration of the benefit and necessity" of the services rendered to the debtor, as well as the "nature, the extent, and the value of such services." 11 U.S.C. § 330(a)(3), (a)(4)(B). Thus, in awarding fees, the bankruptcy court determined that the benefit and value of the Attorneys' services was sufficient to warrant payment in the amount requested. Accordingly, the bankruptcy court necessarily rejected the claims of malpractice contained within Frazin's fee objections, objections on which it had to rule as part of the claims-allowance process. The separate action for malpractice alleged the exact same conduct as the objections that were rejected. The bankruptcy court made this clear in its opinion, stating that Frazin's objections to the fee applications were overruled for the "same reasons" that the bankruptcy court ruled against Frazin on the merits of his malpractice claim.

This court has previously considered the degree to which a bankruptcy court's award of fees to a professional is interrelated with a claim of malpractice against that professional. In *Osherow v. Ernst & Young, L.L.P.* (*In re Intelogic*

*Trace, Inc.*), 200 F.3d 382 (5th Cir. 2000), the bankruptcy court approved the debtor's employment of Ernst & Young to provide accounting services during the bankruptcy proceedings. *Id.* at 384. Although the debtor suspected that Ernst & Young's services were deficient, it did not oppose Ernst & Young's fee application, and the bankruptcy court accordingly awarded the requested fees. *Id.* at 384–85. At a later date, the trustee filed suit against Ernst & Young in state court, alleging causes of action including negligence. *Id.* at 385. Ernst & Young removed the case to the bankruptcy court and moved for summary judgment, arguing among other things that res judicata barred the trustee's claims. *Id.* at 385–86 (citation and internal quotation marks omitted). The bulk of our opinion focused on the fourth prong of res judicata, whether the two actions were based on "the same nucleus of operative facts." *Id.* at 386–88. We held that "an award of fees for professionals . . . employed by a bankruptcy estate represents a determination of 'the nature, the extent, and the value of such services.'" *Id.* at 387 (quoting 11 U.S.C. § 330(a)(3)). We also held that "[b]y granting Ernst & Young's fee application, the bankruptcy court implied a finding of quality and value in Ernst & Young's services." *Id.* We noted that the trustee's state-law claims arose from alleged negligence in the very same services that the bankruptcy court had considered when it awarded fees. *Id.* Thus, we held that the award of professional fees and the malpractice claims arose from a common nucleus of operative fact and that the malpractice claims were barred by res judicata. *Id.* at 388–91.

The *Intelogic* court relied on a discussion of the interconnectedness of fee applications and malpractice claims in *Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925 (5th Cir. 1999). The issue in *Southmark* was whether a state-law claim for malpractice filed by a debtor against an appointed accounting firm was a "core proceeding" under 28 U.S.C. § 157 or

merely a "related matter" from which the bankruptcy court was required to abstain under 28 U.S.C. § 1334(c)(2). *Id.* at 928–30. In holding that the claim was a core proceeding within the bankruptcy court's jurisdiction, this court discussed the relatedness of fee applications and malpractice claims as follows:

> In this case, the professional malpractice claims alleged . . . are inseparable from the bankruptcy context. A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries . . . . The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. . . . Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.
>
> Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims. Excessive professional fees or fees charged for mediocre or, worse, phantom work also cause the estate and the creditors to suffer. . . . A malpractice claim like the present one inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone.

*Id.* at 931.

Based on this case law, we conclude that Frazin's claim for malpractice was necessarily decided by the bankruptcy court in the process of ruling on the Attorneys' fee applications and thus fell constitutionally within the bankruptcy court's jurisdiction. As in *Intelogic,* the bankruptcy court's award of fees to the Attorneys carried with it an implicit finding of quality and value in the services provided by the Attorneys. *Southmark* makes clear that this award of fees was "inseparably related" to enforcement of the appropriate standards of conduct, and so Frazin's malpractice claim for those services "cannot stand alone" from the determination of quality the bankruptcy court made in awarding fees.

*Southmark*'s reasoning reinforces our conclusion regarding the constitutional inquiry: the bankruptcy court, in awarding the Attorneys' fees, necessarily considered and rejected Frazin's malpractice claim as well as his objections grounded in the same allegations.

Unlike Vickie's claim in *Stern*, the malpractice claim was not "independent of the federal bankruptcy law" but was "necessarily resolvable" by a ruling on the Attorneys' fee applications. *Stern*, 131 S.Ct. at 2611. The fee application proceedings had more than "some bearing" on these claims. *Id.* at 2618. Rather, the resolution of the fee application proceedings necessarily resolved the malpractice counterclaim. Therefore, under *Stern*, the bankruptcy court had the authority to enter a final judgment rejecting Frazin's malpractice claim on its merits.

## 2. Breach of Fiduciary Duty

Likewise Frazin's claim that all of the Attorneys' fees be forfeited under Texas fiduciary duty law is a claim that the bankruptcy court must have and did resolve in deciding whether to grant the Attorneys' fee applications the appropriate amount of any fee award.

Frazin brought a *fee-forfeiture* action based on breach of fiduciary duty. As the Memorandum Opinion correctly observed in its discussion of Frazin's breach of fiduciary duty claim, Frazin's complaint "does not allege that the Defendants' breaches of fiduciary duty were a proximate cause of any damage to him. Rather, Frazin seeks to impose a complete fee forfeiture because, according to Frazin, of the seriousness of the Defendants' breaches of fiduciary duty." Throughout these proceedings, Frazin has consistently maintained that his breach of fiduciary duty claim was a fee-forfeiture claim, not an affirmative claim for damages. As the Texas Supreme Court held in its seminal case,

*Burrow v. Acre*, 997 S.W.2d 229 (Tex. 1999), even if a client suffers no actual damages, fee forfeiture in some cases is an appropriate remedy for breach of fiduciary duty by an attorney. *Id.* at 240. The fee-foreiture remedy "must fit the circumstances presented" and is limited only to "clear and serious" violations of the duty owed to a client. *Id.* at 241. Because the sole purpose of Frazin's breach of fiduciary duty action was to defeat the Attorneys' fee applications in bankruptcy court, the bankruptcy court necessarily had to resolve every aspect of his breach of fiduciary duty claim to rule on the Attorneys' fee applications.

This present claim is precisely the type of claim that the Supreme Court in *Stern* envisioned that a bankruptcy court has jurisdiction to hear and upon which the bankruptcy court is empowered to render a final judgment, Article III of the Constitution notwithstanding. While in *Stern* there was "there was never any reason to believe that the process of adjudicating [the stepson's] proof of claim would necessarily resolve [the widow/debtor's] counterclaim," in this case, the bankruptcy court could not adjudicate the Attorneys' fee application without resolving Frazin's fee-forfeiture cause of action. *See Stern*, 131 S. Ct. at 2617. The instant case is also analogous to *Katchen v. Landy*, 382 U.S. 323 (1966), which the Supreme Court cited in *Stern* as an example of a case where the bankruptcy court could reach the creditor's proof of claim without violating the Constitution. In *Katchen*, the "plenary proceeding [in an Article III court that] the creditor sought [as to whether this creditor had been preferred] could be brought into the bankruptcy court because 'the same issue [arose] as part of the process of allowance and disallowance of claims.'" *Id.* (third alteration in original) (quoting *Katchen*, 382 U.S. at 336). The same is true in the present case. Frazin's fee-forfeiture action arose as part of the Attorneys' fee application, and the bankruptcy court could not rule on the Attorneys' fee applications

without resolving Frazin's fee-forfeiture claim.  Thus, the bankruptcy court had jurisdiction to resolve Frazin's fiduciary duty claim.

*3. Deceptive Trade Practices Act*

The other counterclaim on which the bankruptcy court entered a final judgment was for violations of the DTPA.  There are three elements to a DTPA claim: "(1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the consumer's damages." *Hugh Symons Grp., plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002) (citing *Doe v. Boys Club of Greater Dall. Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)) (additional citation omitted).  To rule on the merits of this claim, the bankruptcy court "was required to and did make several . . . legal determinations that were not 'disposed of in passing on objections'" to the Attorneys' fee applications, which is the precise problem that the *Stern* Court found when the bankruptcy court there ruled on Vickie's counterclaim.  131 S. Ct. at 2617 (quoting *Katchen*, 382 U.S. at 323, 332 n.9).   In the present case, although the bankruptcy court necessarily had to resolve most, if not all, of Frazin's *factual* allegations that supported his DTPA claims in the course of addressing claims that were otherwise within the court's jurisdiction, the bankruptcy court was not required to resolve the legal effect flowing from those factual allegations in the context of a DTPA claim.

For example, the bankruptcy court observed that under Texas law, "a plaintiff may not fracture what is essentially a negligence claim into claims for DTPA violations, breach of fiduciary duty or other claims." Similarly, the bankruptcy court recognized that "[w]here the gravamen of a plaintiff's complaint is that the lawyer inadequately represented the plaintiff in some fashion, the DTPA will not apply." The bankruptcy court then "conclude[d] that

the DTPA claims, to the extent premised upon the conduct alleged in paragraphs 7, 8, 11, 12 and 13 of the Complaint[,] are simply re-stated negligence claims which violate Texas's common law rule against the 'fracturing' of claims, and are thus not cognizable under the DTPA."  The bankruptcy court was not required to decide whether a state court or an Article III court would find that the allegations were "simply re-stated negligence claims" under Texas law in order to rule on the fee applications.

By contrast, it *was* necessary for the bankruptcy court to decide whether the factual allegations were true and if so, the impact on the fee applications, regardless of whether the factual allegations could form an element of one or more state-law causes of action outside of the court's jurisdiction.  The bankruptcy court carefully scrutinized each of Frazin's factual allegations and the evidence, made factual determinations, and resolved the impact on the fee applications.  The analysis of the claims that Frazin alleged were DTPA violations consumes twenty-six pages of the bankruptcy court's Memorandum Opinion.  The testimony and other evidence are examined in minute detail.  In sum, the *factual* resolutions were part and parcel of the adjudication of the fee applications, so they must survive reversal.

Because it was not necessary to decide the DTPA claim to rule on the Attorneys' fee applications, we conclude that the bankruptcy court lacked the authority to enter a final judgment as to that claim.  Nevertheless, we hold that all factual determinations made in the course of analyzing Frazin's DTPA claim were within the court's constitutional authority because they were necessarily resolved in the process of adjudicating the fee applications.

*B. Merits of Malpractice & Breach of Fiduciary Duty Claims*

Based on the foregoing discussion, the only claims that are properly before us are the malpractice and breach of fiduciary duty claims, over which the

bankruptcy court had authority to enter a final judgment. We now turn to the merits of this issue.

The bankruptcy court held that Frazin had failed to establish malpractice in part because he failed to show causation, which requires a showing that "but for the attorney's negligence the client would have prevailed on appeal." *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989). In its order affirming the judgment of the bankruptcy court, the district court stated that it would have ruled against Frazin's malpractice claim on the same grounds, but that Frazin had waived this issue. We agree that Frazin has waived this issue. In his brief to the district court, Frazin mentioned the legal standard for causation, but failed to apply it by making and substantiating the argument that he would have prevailed on appeal but for the Attorneys' malpractice. He also failed to identify that issue as a proposed basis for deciding the case. In order to preserve an argument for appeal, "the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994).

The bankruptcy court's findings of fact as to Frazin's breach of fiduciary duty allegations are supported by the evidence, and the bankruptcy court's conclusions of law were sound. The bankruptcy court found that some of Frazin's contentions regarding breach of fiduciary duty were valid, but concluded that though there had been breaches of fiduciary duty to some extent, they did not warrant fee forfeiture. We affirm the district court's judgment affirming the bankruptcy court's judgment as to the breach of fiduciary duty claim.

## IV. CONCLUSION

We conclude that the bankruptcy court was within its authority to enter a final judgment on Frazin's state-law counterclaims for malpractice and breach of fiduciary duty, as these claims were necessarily resolved in the course of ruling on the Attorneys' fee applications. We also agree with the bankruptcy court that these claims fail on their merits. Most of all, we uphold the final judgment on the fee applications. However, we hold that the bankruptcy court erred in entering a final judgment on Frazin's DTPA state-law counterclaim because it was not necessary to resolve it in the course of ruling on the Attorneys' fee applications. For this reason, the judgment of the district court affirming the bankruptcy court must be REVERSED in part and AFFIRMED in part.

Furthermore, we REMAND this case to the district court for further proceedings consistent with this opinion. We note (though we do not express an opinion) that although the bankruptcy court did not have jurisdiction to make a final judgment on the DTPA claim, the district court may have that authority. *See Stern*, 131 S. Ct. at 2619–20 (discussing district court authority under 28 U.S.C. §§ 157(c)–(d), 1334(c)); *see also Wellness Int'l Network, Ltd. v. Sharif*, No. 12-1349, 2013 WL 4441926, at *20–21 (7th Cir. Aug. 21, 2013); *Exec. Benefits Ins. Agency v. Arkinson* (*In re Bellingham Ins. Agency, Inc.*), 702 F.3d 553, 565–66 (9th Cir. 2012), *cert. granted* 133 S. Ct. 2880 (2013); *Waldman v. Stone*, 698 F.3d 910, 921–22 (6th Cir. 2012), *cert. denied* 133 S. Ct. 1604 (2013).

17

No. 11-10403

OWEN, Circuit Judge, concurring.

I fully join the majority opinion. I write separately only to emphasize that the Supreme Court's opinion in *Stern v. Marshall*[1] does not affect the ability of a bankruptcy court to resolve discrete issues that a core bankruptcy proceeding and a state-law cause of action share in common. The bankruptcy court properly recognized that many, if not all, of the facts Frazin alleged in support of his Texas Deceptive Trade Practices Act (DTPA) claims related to the quality, value and reasonableness of the professional services that the Appellees rendered.

Though a bankruptcy court cannot issue a final judgment disposing of certain claims in cases like the present one, this does not mean that bankruptcy courts are neutered in adjudicating core proceedings under 11 U.S.C. § 157(b)(2). A bankruptcy court should examine and resolve all challenges to a fee application, even if the challenges could or do constitute one or more elements of state-law or other causes of action that must be finally resolved by an Article III or state court. A bankruptcy court has jurisdiction to resolve discrete factual issues that necessarily must be decided in adjudicating claims for professional fees under § 330. Bankruptcy courts should not shy away from the task of resolving all issues that pertain to a fee application, even if those issues also form the basis, in whole or in part, of a potential state-law cause of action.

When a fee application is filed under § 330, a party to the bankruptcy proceedings who has standing to challenge that application must assert all grounds for denying or reducing the claim for fees. A party cannot reserve those grounds for litigation in another forum simply because the grounds also may be at issue in state-law causes of action. The fact that there are many issues common to a proceeding under § 330 and to state-law causes of action does not insulate those common grounds from the requirement that they be raised in the

---

[1] 131 S.Ct. 2594 (2011).

No. 11-10403

bankruptcy court.  The issues necessary to adjudicate a fee application should be decided by the bankruptcy court.  If and when a party who objected to the fee application files suit on state-law or other nonbankruptcy claims, the court in which that suit is filed can apply issue preclusion principles to prevent wasteful and unnecessary relitigation of factual and legal issues.[2]

---

[2] *See Southmark Corp. v. Coopers & Lybrand* (*In re Southmark Corp.*), 163 F.3d 925, 932 (5th Cir. 1999).

No. 11-10403

REAVLEY, Circuit Judge, concurring in part and dissenting in part.

I would affirm the judgment. We affirm the bankruptcy court's distribution of estate funds, and that is all I see before us.

The two law firms had obtained a large recovery in the lawsuit against Lamajak, Inc., enough to satisfy all creditor claims, and then the court had only to distribute what was left. The firms filed fee applications, to which the debtor Frazin objected and then filed numerous claims against them, including negligence and malpractice and even deceptive trade practice, all directed at the conduct of the lawyers related to the lawsuit against Lamajak, Inc. There was no use of the word counterclaim and no pleading meeting Rule 8 requirements, as a counterclaim must do.

I need not spell out my objections to this court's judgment because no harm is done, at least in this case, and the district court will no doubt simply dismiss whatever has been remanded. However, if it were necessary, I would hold that a bankruptcy court does not lose jurisdiction in deciding the administration of the estate when that has some collateral effect not easily avoided.