# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2014

No. 12-50382

Lyle W. Cayce
Clerk

In the Matter of: 804 CONGRESS, L.L.C.,

Debtor,

-----------------------------------

WELLS FARGO BANK, N.A.; GRETA GOLDSBY,

Appellees,

v.

804 CONGRESS, L.L.C.,

Appellant.

Cons w/ 12-50392

In the Matter of: 804 CONGRESS, L.L.C.,

Debtor,

-----------------------------------

WELLS FARGO BANK, N.A.,

Appellee,

v.

804 CONGRESS, L.L.C.,

Appellant.

Nos. 12-50382, 12-50392 & 12-50425

Cons w/ 12-50425

In the Matter of: 804 CONGRESS, L.L.C.,

Debtor,

----------------------------------
GRETA GOLDSBY,

Appellee,

v.

804 CONGRESS, L.L.C.,

Appellant.

Appeals from the United States District Court
for the Western District of Texas

Before JOLLY, GARZA, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The principal issue in this case is whether, after an automatic stay in bankruptcy has been lifted and a creditor is permitted to foreclose on real property, federal or state law governs an oversecured creditor's recovery of attorneys' and other fees from the sale proceeds. A corollary issue is whether the bankruptcy court has jurisdiction over the sale proceeds for purposes of determining the creditor's right to recover attorneys' fees and the Deed of Trust trustee's right to recover a contractually specified commission for conducting the non-judicial foreclosure sale. The bankruptcy court held that it had jurisdiction. It denied the request for attorneys' fees, based on the lack of supporting evidence, and substantially reduced the Deed of Trust trustee's commission,

2

finding the contractual commission unreasonable under 11 U.S.C. § 506(b). The district court reversed, holding that the bankruptcy court had no jurisdiction. We reverse the district court's judgment and remand for further proceedings.

# I

The debtor in the bankruptcy proceedings is 804 Congress, whose only significant asset was an office building in Austin, Texas (to which we will refer as "the property"). Wells Fargo Bank, N.A. (Wells Fargo) had financed the purchase of the property and held a "Real Estate Lien Note" (the Note). To secure the Note, 804 Congress executed a "Deed of Trust Security Agreement/Financing Statement" (the Deed of Trust), which granted Wells Fargo a first-priority lien on the property. Greta Goldsby (Goldsby, and, collectively with Wells Fargo, the Creditors) became the substitute trustee under the Wells Fargo Deed of Trust. After purchasing the building, 804 Congress obtained a loan from another creditor, VIA Lending (VIA), secured by a second-priority lien on the property.

This bankruptcy proceeding is 804 Congress's second. In response to threatened foreclosure by VIA, 804 Congress first filed for bankruptcy in 2009. That case was dismissed. 804 Congress commenced the present bankruptcy proceeding after a foreclosure sale was scheduled by Wells Fargo.[1]

Wells Fargo filed an Emergency Motion for Relief from Stay, seeking to proceed with a non-judicial foreclosure sale of the property. The bankruptcy court granted Wells Fargo's motion in an order that provided that Wells Fargo "shall be permitted to conduct a foreclosure sale of the Property on September 7, 2010, in accordance with applicable state laws" if 804 Congress had not met certain conditions designed to permit it to sell the property under the

---

[1] 804 Congress had been in default on Wells Fargo's loan since August of 2009, and Wells Fargo actually had been operating the building itself for some time after 804 Congress abandoned it.

Nos. 12-50382, 12-50392 & 12-50425

superintendence of the bankruptcy court before that date. 804 Congress did not meet these conditions.

Goldsby conducted a non-judicial foreclosure sale of the property in accordance with the Deed of Trust, and that sale yielded proceeds of approximately $4.355 million. Pursuant to the terms of the Deed of Trust,[2] Goldsby determined that the proceeds should be distributed as follows:

| | |
|---|---|
| 1) Commission to the Deed of Trust Trustee (Goldsby), equaling five percent of the bid | $217,750.00 |
| 2) Indebtedness and management expenses to Wells Fargo (including attorneys' fees of more than $87,000) | $3,296,915.00 |
| 3) To VIA, as second lienholder | $618,639.28 |
| 4) To 804 Congress, remaining balance | $221,695.72 |

Because 804 Congress did not have a debtor-in-possession account in which to deposit the amount due 804 Congress, Goldsby filed a motion with the bankruptcy court to distribute the funds to 804 Congress's attorney. Upon objection from the United States Trustee in the bankruptcy proceeding, Goldsby withdrew this motion.

---

[2] The Deed of Trust directed the trustee to distribute the proceeds of the foreclosure sale in following order, consistent with Texas law:

a.  expenses of foreclosure, including a commission to Trustee of 5% of the bid;
b.  to [Wells Fargo], the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
c.  any amounts required by law to be paid before payment to [804 Congress]; and
d.  to [804 Congress], any balance.

Nos. 12-50382, 12-50392 & 12-50425

The bankruptcy court indicated that it intended to exercise jurisdiction over the entire proceeds of the foreclosure sale, and the Creditors each filed proofs of claim for the amount to which they claimed they were entitled under the Deed of Trust. 804 Congress subsequently filed objections to Wells Fargo's and Goldsby's proofs of claim and filed a Motion to Distribute Funds seeking an order directing Goldsby to pay the principal and interest due Wells Fargo and VIA and to pay the remaining funds to 804 Congress pending resolution of the claims against the funds.

The bankruptcy court subsequently entered an order directing Goldsby to pay (1) VIA in full,[3] (2) Wells Fargo in full with the exception of its claim for attorneys' fees, which the bankruptcy court completely disallowed, and (3) herself $7,500 rather than $217,750. The bankruptcy court reasoned that Wells Fargo's request for attorneys' fees in the amount of $87,894 should be denied in its entirety because it had not filed a proper application for fees and provided no supporting documentation or testimony that the fees were reasonable. With regard to Goldsby's claim for her commission, the bankruptcy court reasoned that $217,750 (five percent of the bid for the property, as specified in the Deed of Trust) was an unreasonable amount under 11 U.S.C. § 506(b), since Goldsby testified that she had spent no more than twenty hours of time on the foreclosure and that her hourly rate was $375. The bankruptcy court awarded Goldsby $7,500, based on twenty hours of work at her hourly rate.

Wells Fargo appealed to the district court, which reversed the bankruptcy court and remanded for further proceedings. The district court held that when the bankruptcy court lifted the stay and the foreclosure sale occurred, the bankruptcy court ceased to have jurisdiction over the property and the sale proceeds. The district court held "that the bankruptcy court erred in exercising

---

[3] VIA had already been paid, so the bankruptcy court's order was actually a ratification of that prior payment.

Nos. 12-50382, 12-50392 & 12-50425

jurisdiction over the foreclosure-sale proceeds, as the proceeds were governed by Texas law." The district court remanded "for further proceedings with instructions that Goldsby disburse the foreclosure-sale proceeds in accordance with Texas law and the Deed of Trust." This appeal followed.

## II

The extent of a bankruptcy court's jurisdiction is a legal issue that we review de novo.[4] Wells Fargo contends that the bankruptcy estate only has an interest in "any surplus proceeds over the contractual, state law calculated debt payable under the Deed of Trust." It argues that the bankruptcy court therefore "had no authority to direct Goldsby to disburse the foreclosure sale proceeds in a manner different than provided under the Deed of Trust." We disagree.

Contrary to Wells Fargo's position and the district court's holding, federal law governs what is to be distributed to a secured claimant that is oversecured.[5] When a "secured claim is secured by property the value of which, after any recovery [of certain amounts by the bankruptcy trustee], is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."[6] By the terms of § 506(b), an oversecured creditor may recover, on a secured basis, "fees, costs, or charges provided for under the agreement . . . under which such claim arose," such as the Deed of Trust at issue in this case, but only to the extent that the fees, costs, or charges are reasonable. We do not read § 506(b) as applying only when a sale occurs by the trustee in bankruptcy under § 363.[7]

---

[4] *Bass v. Denney* (*In re Bass*), 171 F.3d 1016, 1021 (5th Cir. 1999).

[5] 11 U.S.C. § 506(b).

[6] *Id.*

[7] 11 U.S.C. § 363.

Nos. 12-50382, 12-50392 & 12-50425

## A

The only disputed amounts in this appeal are the amount to be paid to the Deed of Trust trustee, Goldsby, and the amount of attorneys' fees that Wells Fargo is to recover. The Note provided that Wells Fargo was entitled to "all reasonable attorneys' and/or collection fees" that it incurred following default. The Deed of Trust directed that upon foreclosure, the trustee was to "from the proceeds of the sale, pay, in this order":

> a.   expenses of foreclosure, including a commission to Trustee of 5% of the bid;
> b.   to [Wells Fargo], the full amount of principal, interest, attorney's fees, and other charges due and unpaid;
> c.   any amounts required by law to be paid before payment to [804 Congress]; and
> d.   to [804 Congress], any balance.

The attorneys' fees that Wells Fargo seeks were largely incurred post-petition, though the parties agree that Wells Fargo claimed pre-petition attorneys' fees as well.

Our court addressed the applicability of § 506(b) to pre-petition attorneys' fees in *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*,[8] holding that § 506(b) governs, rather than state law.[9] The creditor in that case held a note that was secured by a lien on real property.[10] The note provided that upon default and if the note was placed in the hands of an attorney for collection, an additional amount of fifteen percent was to be

---

[8] 794 F.2d 1051 (5th Cir. 1986), *overruled in part by Stern v. Marshall*, 131 S. Ct. 2594 (2011), *as recognized in Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 319 (5th Cir. 2013).

[9] *In re Hudson Shipbuilders, Inc.*, 794 F.2d at 1056-58.

[10] *Id.* at 1053.

7

added to the remaining unpaid principal as attorneys' fees.[11] The creditor filed a proof of claim in bankruptcy that included attorneys' fees calculated as fifteen percent of the unpaid balance.[12] The creditor requested the bankruptcy court to lift the automatic stay so that it could foreclose on the debtor's property.[13] The bankruptcy court entered an order lifting the stay, but before the foreclosure occurred, a second-in-priority lienholder filed a motion in the bankruptcy court disputing the amount of attorneys' fees that the first-priority creditor claimed.[14] The bankruptcy court held that § 506(b) controlled, not state law, and that notwithstanding the agreement's provisions, a reasonable attorneys' fee was $30,000.[15] This court affirmed.

We held in *Hudson Shipbuilders* that the bankruptcy court had jurisdiction to resolve the attorneys' fee issue reasoning that "the bankruptcy court acted pursuant to the [c]ongressional mandate expressed in 11 U.S.C. § 506(b) to prevent [the first-priority creditor] from getting a windfall by extracting attorneys' fees in excess of what could legitimately be demanded in a bankruptcy proceeding."[16] We rejected the creditor's contention "that state law governs the enforcement of attorneys' fee provisions in connection with secured claims in bankruptcy."[17] We concluded that when Congress enacted § 506(b), it "intended that federal law should govern the enforcement of attorneys' fees

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 1054.

[16] *Id.* at 1055.

[17] *Id.* at 1056.

provisions, notwithstanding contrary state law."[18]  We held that the creditor's "assertion that if the contractual attorneys' fee provision is valid under state law it must be enforced by the bankruptcy court, and that in such cases the bankruptcy court is without power to arrive at what it otherwise perceives to be a reasonable fee, is contrary to the weight of judicial precedent and is betrayed by a legislative intent indicating that awards are to be made under § 506(b) regardless of state law."[19]

Our decision in *Hudson Shipbuilders* is controlling, at least with respect to Wells Fargo's claim for pre-petition attorneys' fees.  With regard to claims for post-petition attorneys' fees and Goldsby's post-petition claim for the five percent Deed of Trust trustee's fee, we can discern no basis from the text of § 506(b) for treating post-petition claims differently.  We agree with the Eleventh Circuit that § 506(b) "does not draw a distinction between fees vested pre- or post-petition."[20]  The Supreme Court held in *United States v. Ron Pair Enterprises*[21] that § 506(b) governs an oversecured creditor's claim for post-petition interest,[22] and in dicta, clearly indicated that § 506(b) would govern post-petition claims for

---

[18] *Id.* (citing *Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674 (9th Cir. 1986); *Unsecured Creditors' Comm. v. Walter E. Heller & Co. Se. (In re K.H. Stephenson Supply Co.)*, 768 F.2d 580 (4th Cir. 1985)).

[19] *Id.* at 1057; *see also Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1311, 1314, 1316 (11th Cir. 2001) (holding that although a note provided for attorneys' fees equal to fifteen percent of the principal, which would have been $146,799, "the language of 506(b) [does not] indicate that just because a given fee arrangement is enforceable under state law, it should be exempt from the reasonableness standard" and that "the contractually set attorney's fees [that became due under the note pre-petition] . . . must be assessed for reasonableness under § 506(b)").

[20] *In re Welzel*, 275 F.3d at 1314.

[21] 489 U.S. 235 (1989).

[22] *Ron Pair Enters.*, 489 U.S. at 237.

fees, costs, or charges provided for under the agreement from which the claim arose.[23]

The only distinction that the text of § 506(b) draws between interest and fees, costs, or charges is that fees, costs, or charges provided for in an agreement or under a state statute must be reasonable while no such restriction is placed on interest.   The Supreme Court held in *Ron Pair Enterprises* that the word "reasonable" in § 506(b) does not modify "interest" but does modify "fees, costs, or charges provided for under the agreement."[24]   The issue in that case was whether a creditor could receive post-petition interest on a nonconsensual oversecured claim allowed in a bankruptcy proceeding.[25]   The creditor was the federal government, which had filed proof of a pre-petition claim for unpaid withholding and Social Security taxes, penalties, and pre-petition interest and had perfected a lien on property owned by the debtor.  The Supreme Court held that under § 506(b), an oversecured creditor is entitled to recovery of post-petition interest.[26]  "Recovery of postpetition interest is unqualified."[27]  However, "[r]ecovery of fees, costs, and charges . . . is allowed only if they are reasonable and provided for in the agreement under which the claim arose."[28]

The question remains as to whether a lifting of a stay in bankruptcy and a non-judicial foreclosure conducted under state law changes the equation.

---

[23] *Id.* at 241; *see also* 1 COLLIER BANKRUPTCY MANUAL ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds., 4th ed. 2013) ("In the case of postpetition fees, costs and charges, the allowance of these expenses as part of an oversecured claim is subject to a determination as to their reasonableness under federal bankruptcy law.").

[24] *Ron Pair Enters.*, 489 U.S. at 241.

[25] *Id.* at 237.

[26] *Id.* at 241.

[27] *Id.*

[28] *Id.*

Nos. 12-50382, 12-50392 & 12-50425

Again, we can discern no intent from § 506(b) that oversecured creditors who are permitted to foreclose are to be treated differently from oversecured creditors whose claims are satisfied within the bankruptcy proceeding.

Wells Fargo and Goldsby argue that once the stay was lifted and foreclosure occurred, state law should govern how the proceeds from the sale of the property are distributed by the Deed of Trust trustee. They contend that the terms of the Deed of Trust are to be strictly applied and are controlling. A necessary corollary of that argument is that the Deed of Trust trustee would be empowered to resolve not only what attorneys' fees, charges, and costs were to be paid from the proceeds to Wells Fargo and Goldsby, but also the validity or amount of claims asserted by subordinate lienholders, such as VIA, since the Deed of Trust directed Goldsby to pay "any amounts required by law to be paid before payment" to the debtor. Although there is no dispute in this case as to whether VIA was to be paid from the sale proceeds or how much it was to be paid, in other cases in which a deed of trust directs the trustee to satisfy junior liens from the sale proceeds, disagreements could arise. Under Wells Fargo's and Goldsby's view of the law, the bankruptcy court would have no role to play in resolving disputes about a junior lienholder's claim.

The bankruptcy court's order lifting the stay allowed Wells Fargo to foreclose on the property in accordance with state law foreclosure procedures. It did not give the Deed of Trust trustee any further authority and did not have the effect of insulating the debtor or any of the creditors from the reach of § 506(b). Lifting the automatic stay to allow Wells Fargo to foreclose was not tantamount to an abandonment of the property.[29]

---

[29] *See Killebrew v. Brewer* (*In re Killebrew*), 888 F.2d 1516, 1519 (5th Cir. 1989) (explaining that "[t]he concept of abandonment appears to have become confused with actions taken to allow [a creditor] to realize on its security interest through the lifting of the automatic stay under section 362"); *see also Catalano v. Comm'r*, 279 F.3d 682, 687 (9th Cir. 2002) (holding that "an order lifting the automatic stay by itself does not release the estate's interest

11

**B**

Based on the text of § 506(b), both the Deed of Trust trustee's fee sought by Goldsby and the attorneys' fees sought by Wells Fargo must be reasonable. It is not dispositive that under Texas law,[30] a trustee's contractual fee of five percent of the indebtedness would generally be enforceable. We held in *Hudson Shipbuilders* that a bankruptcy court has the power to arrive at a reasonable attorneys' fee even "if the contractual attorneys' fee provision is valid under state law."[31] We agree with the Eleventh Circuit that "the language of 506(b) [does not] indicate that just because a given fee arrangement is enforceable under state law, it should be exempt from the reasonableness standard."[32]

The Ninth Circuit's decision in *Joseph F. Sanson Investment Co. v. 268 Ltd. (In re 268 Ltd.)*[33] is also persuasive. The debtor, 268 Limited, had purchased property from Sanson and executed a deed of trust that provided that in the event 268 Limited defaulted and the property was sold by the deed of trust trustee, five percent of the remaining balance due at the time of default would be paid Sanson, who had retained a security interest in the property evidenced by the deed of trust.[34] An involuntary bankruptcy petition was filed against 268

---

in the property and 'the act of filing the automatic stay is not analogous to an abandonment of the property'").

[30] *E.g.*, *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 874 (Tex. App.—Dallas 2005, no pet.) (enforcing five-percent commission provision); *Airline Commerce Bank v. Commercial Credit Corp.*, 531 S.W.2d 171, 176 (Tex. App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.) (same).

[31] *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1057 (5th Cir. 1986).

[32] *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1314 (11th Cir. 2001).

[33] 789 F.2d 674 (9th Cir. 1986).

[34] *In re 268 Ltd.*, 789 F.2d at 675.

Limited, the property was sold for a sum in excess of the principal owed, and Sanson, as an oversecured creditor, applied to the bankruptcy court to recover the five percent stipulated in the deed of trust for attorneys' fees.[35]  The Ninth Circuit held that "§ 506(b) preempts the state law governing the availability of attorney's fees as part of a secured claim, and . . . the bankruptcy court correctly engaged in an independent reasonableness inquiry."[36]  The debtor had argued "that if the contractual fee provision would be enforceable under Nevada law, then the amount provided is reasonable per se under § 506(b)."[37]  The court rejected that argument, explaining that "[r]easonableness and enforceability are not, however, coterminous."[38]  The court upheld the bankruptcy court's finding that $20,000 was a reasonable fee, rather than $197,500, which was five percent of the outstanding balance at the time the property was sold.[39]

The reasoning in *Hudson Shipbuilders*, *Welzel*, and *268 Limited,* that a bankruptcy court may engage in a reasonableness analysis under § 506(b) even if an agreement's provisions for fees would be enforceable under state law, applies to a deed of trust's provisions setting a commission for a trustee.  If a contractual fee is not reasonable, it will not be given effect for the purposes of § 506(b).

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.* at 675-76.

[39] *Id.* at 675, 677-78; *see also* 1 COLLIER BANKRUPTCY MANUAL ¶ 506.03[3][b] (Alan N. Resnick & Henry J. Sommer eds., 4th ed. 2013) (observing that "most courts hold that federal law applies in determining the enforceability of a provision requiring the payment of attorney's fees" and "[o]nly a handful of courts have held that state law, or a synthesis of state and federal law, applies"); *id.* at ¶ 506.03[3][c] ("The courts have been fairly uniform in holding that they have inherent power to determine the reasonableness of the amount of any attorney's fees to be allowed under section 506(b) and that reasonableness is to be determined in accordance with federal standards.").

Nos. 12-50382, 12-50392 & 12-50425

A fee determination under 11 U.S.C. § 506(b) is a mixed question of law and fact. We review the applicability of § 506(b) de novo but review the bankruptcy judge's determination of reasonableness for abuse of discretion.[40] The bankruptcy court did not abuse its discretion in concluding that a reasonable fee for Goldsby was $7,500. This amount was supported by her testimony that she spent more than ten but no more than twenty hours in carrying out the foreclosure and that her hourly rate was $375.

Whether the bankruptcy court abused its discretion in finding that Wells Fargo failed to prove any reasonable attorneys' fees is a closer question. There was evidence that attorneys for Wells Fargo had provided some services, and there was evidence that Wells Fargo had in fact paid its attorneys the amounts it sought to recover. However, on balance, we conclude that the bankruptcy court was within its discretion in finding that there was no documentation of the time that was spent and no testimony as to what was a reasonable fee.[41] Based on this record, we cannot say that the bankruptcy court erred in finding under § 506(b) that the amount of attorneys' fees Wells Fargo sought was not substantiated and therefore was not shown to be reasonable.

We note that even if Texas law governed the issue of attorneys' fees, the Supreme Court of Texas has recognized that a noteholder can be limited to reasonable attorneys' fees notwithstanding a clause in the note obligating payment of a specified percentage of the loan as attorneys' fees to the

---

[40] *See Bridgeport Tank Trucks v. Lien Agent (In re EnRe LP)*, 457 F.3d 493, 494 (5th Cir. 2006); *Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.)*, 794 F.2d 1051, 1058 (5th Cir. 1986).

[41] *See generally* 1 COLLIER BANKRUPTCY MANUAL ¶ 506.03[3][c] (Alan N. Resnick & Henry J. Sommer eds., 4th ed. 2013) ("The bankruptcy courts will generally require the party seeking allowance of attorney's fees to carry the burden of demonstrating reasonableness by providing a detailed description of the services rendered, supporting documentation, or other evidence prior to making a determination on an application for payment [under § 506(b)].").

noteholder.[42]    Under Texas law, Wells Fargo would bear the burden of demonstrating that the fees it requested were reasonable.[43]

## III

Wells Fargo and Goldsby assert that, even if § 506(b) governs rather than state law, and the bankruptcy court did not abuse its discretion in failing to find that the contractual commission under the Deed of Trust and the attorneys' fees that Wells Fargo claims were reasonable under § 506(b), the claims for the balance of the commission and all of Wells Fargo's attorneys' fees should be recoverable under § 502.  Several courts have concluded that § 506(b) deals with the priority of secured claims, not allowance of claims.[44]  These same courts have indicated that certain claims for amounts found not to be reasonable under § 506(b) may be recoverable under § 502.[45]

The Ninth Circuit, in *268 Limited*, discussed above, held that although the bankruptcy court found that $20,000 was a reasonable attorneys' fee under

---

[42] *E.g.*, *F. R. Hernandez Constr. & Supply Co. v. Nat'l Bank of Commerce of Brownsville*, 578 S.W.2d 675, 676-77 (Tex. 1979).

[43] *See Garcia v. Gomez*, 319 S.W.3d 638, 646 (Tex. 2010).

[44] *See UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 5 (1st Cir. 2007) (asserting that "[t]here is universal agreement that whereas section 506 furnishes a series of useful rules for determining whether and to what extent a claim is secured (and, therefore, entitled to priority), it does not answer the materially different question of whether the claim itself should be allowed or disallowed" and that "the general rules that govern the allowance or disallowance of claims are set out in section 502"); *Welzel v. Advocate Realty Invs., LLC (In re Welzel)*, 275 F.3d 1308, 1317 (11th Cir. 2001) (holding that § 506(b) "is completely silent with regard to the allowance/disallowance issue" and that "[t]his silence suggests that § 506(b) is meant not to displace the general instructions laid down in § 502, but to be read together with § 502 in a complementary manner"); *In re 268 Ltd.*, 789 F.2d at 678 (concluding that § 506(b) "establishes the requirements for a secured claim" and "may be understood to define the portion of the fees which shall be afforded secured status"); *see also* 1 COLLIER BANKRUPTCY MANUAL ¶ 506.01 (Alan N. Resnick & Henry J. Sommer eds., 4th ed. 2013) ("[Section 506] does not govern the allowance or disallowance of the underlying claim itself.  Rules governing the allowance of claims generally are provided in section 502.").

[45] *See id.*

§ 506(b), the remainder of the five percent contractual attorneys' fee was recoverable under § 502 as an unsecured claim.[46] The court reasoned that the text of § 506(b) supported its conclusion and that "to bar Sanson from seeking the balance of its fees as an unsecured claim would make it worse off in bankruptcy than it would have been if its claim were unsecured."[47]

Similarly, in *Welzel*, the Eleventh Circuit held that any portion of a contractual attorneys' fee that was not found reasonable under § 506(b) should be bifurcated and treated as an unsecured claim.[48] In *Welzel* a contractual provision in a note stipulated that the lender would be entitled to collect fifteen percent of the principal plus accrued interest as attorneys' fees.[49] After concluding that these "contractually set attorney's fees . . . must be assessed for reasonableness under § 506(b),"[50] the court held that "[r]easonable fees are then to be treated as a secured claim. If a portion of the fees are deemed unreasonable, however, the fees should be bifurcated between the reasonable portion, treated as a secured claim, and the unreasonable portion, treated as an unsecured claim."[51]

The First Circuit, in dicta, agreed with *Welzel*, concluding that contractual prepayment penalties were recoverable by a creditor from a solvent debtor under § 502 even if, or to the extent that, the penalties were found unreasonable under

---

[46] *In re 268 Ltd.*, 789 F.2d at 678.

[47] *Id.*

[48] *In re Welzel*, 275 F.3d at 1318.

[49] *Id.* at 1311.

[50] *Id.* at 1316.

[51] *Id.* at 1318.

16

§ 506(b).[52] The court ultimately concluded that because the debtor was "solvent and the bankruptcy estate possesses funds sufficient to pay all claims (secured and unsecured) in full, no useful purpose would be served by inquiring into whether the prepayment penalties are reasonable (and, thus, deserving of priority) within the contemplation of section 506(b)."[53]

The reasoning in *268 Limited, Welzel*, and *Gencarelli* regarding the allowance under § 502 of fees, costs, or charges found unreasonable under § 506(b) is arguably in tension with the Supreme Court's decision in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates*.[54] The Supreme Court held that, with respect to interest, § 506(b) had the "substantive effect of denying undersecured creditors postpetition interest on their claims."[55] The contention has been made that § 506(b) similarly has the substantive effect of denying recovery of post-petition fees, costs, or charges found unreasonable from

---

[52] *UPS Capital Bus. Credit v. Gencarelli (In re Gencarelli)*, 501 F.3d 1, 6-7 (1st Cir. 2007); *see also id.* at 5, concluding:

> We are persuaded that UPS's view of the interrelationship between sections 502 and 506(b) is correct. As a matter of bankruptcy law, the lower courts should not have disallowed the claims for prepayment penalties in toto based solely upon a finding that they were not entitled to priority under section 506(b). Section 502, not section 506(b), affords the ultimate test for allowability, and any claim satisfying that test is, at the very worst, collectible as an unsecured claim. Leading commentators, case law from other circuits, and common sense all conduce to this result.

[53] *Id.* at 8.

[54] 484 U.S. 365 (1988).

[55] *Timbers of Inwood Forest Assocs.*, 484 U.S. at 372; *id.* at 373, 379 (holding that § 506(b) "deni[es] . . . postpetition interest to undersecured creditors," and recognizing "an apparent anomaly" that when a debtor proves solvent, 11 U.S.C. § 726(a)(5) provides for post-petition interest on unsecured claims "but not on the secured portion of undersecured creditors' claims," but concluding that these particular "inequitable effects . . . are entirely avoidable, since an undersecured creditor is entitled to 'surrender or waive his security and prove his entire claim as an unsecured one[]'") (quoting *U.S. Nat'l Bank v. Chase Nat'l Bank*, 331 U.S. 28, 34 (1947)).

being recovered as unsecured claims.[56]   However, the Second Circuit, in *Ogle v. Fidelity & Deposit Co. of Maryland*,[57] distinguished *Timbers*, concluding that in addition to § 506(b), *Timbers* referenced § 502(b)(2), "which expressly disallows a claim for interest that is unmatured."[58]

In *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*,[59] the Supreme Court expressly declined to consider whether "§ 506(b) categorically disallows *unsecured* claims for contractual attorney's fees" because that issue had not been raised in the courts below.[60]   It is not clear whether the issue of whether § 506(b) categorically forecloses recovery of fees or charges found to be unreasonable was raised by 804 Congress in the bankruptcy court

---

[56] *See Ogle v. Fid. & Deposit Co. of Md.*, 586 F.3d 143, 147-48 (2d Cir. 2009) (observing that "[a] fair question is raised by Ogle as to whether section 506(b) of the Code amounts to an express disallowance of [the creditor's] claim by negative inference or otherwise" but concluding "that section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery," rejecting the argument that *Timbers* supports a general rule that bars "claims for post-petition attorneys' fees").

[57] 586 F.3d 143 (2d Cir. 2009).

[58] *Ogle*, 586 F.3d at 148; *see also In re Gencarelli*, 501 F.3d at 6 n.2 (distinguishing *Timbers* on the basis that it "dealt with claims for post-petition interest, which—unlike the prepayment penalties at issue here—are made unavailable as unsecured claims by an explicit statutory provision").

[59] 549 U.S. 443 (2007).  *But see Ogle*, 586 F.3d at 145-46, 148 (discussing the split of authority and holding that an unsecured claim for attorneys' fees incurred post-petition in seeking to enforce a pre-petition indemnity agreement should have been allowed and that "section 506(b) does not implicate unsecured claims for post-petition attorneys' fees, and it therefore interposes no bar to recovery"); *SNTL Corp. v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 841 (9th Cir. 2009) (holding that "we reject the argument that section 506(b) preempts postpetition attorneys' fees for all except oversecured creditors"); 1 COLLIER BANKRUPTCY MANUAL ¶ 502.03[2][b][iv] (Alan N. Resnick & Henry J. Sommer eds., 4th ed. 2013) ("[T]he Ninth Circuit has analyzed and discarded the most commonly made arguments that other bankruptcy principles provide an independent basis for disallowing unsecured claims for attorney's fees incurred postpetition" and that "the trend seems to be moving towards courts allowing claims for attorney's fees where permitted by state law or contractual agreement").

[60] *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 454-55 (emphasis added).

or the district court, and we decline to decide an issue of such moment on the sparse briefing and sketchy factual record before us. Similarly, it is unclear whether the closely-related arguments that Wells Fargo and Goldsby have included in their briefing in this court regarding treatment of their claims, or parts of their claims, as unsecured claims under § 502 were raised in the bankruptcy court.

We leave it to the bankruptcy court to consider in the first instance the questions raised regarding § 502 and whether Goldsby may seek to recover the remainder of her contractual commission as an unsecured creditor, and whether Wells Fargo may seek to recover pre- or post-petition attorneys' fees under § 502, even though the bankruptcy court failed to find that its claim as an oversecured creditor for attorneys' fees was reasonable under § 506(b) for purposes of determining whether those fees should be paid from the proceeds of the sale of secured property.

* * *

We REVERSE the district court's judgment and REMAND the case to the bankruptcy court for proceedings consistent with this opinion.